## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHARLES HOLCOMBE, JR.**                    **CIVIL ACTION**

**VERSUS**                                   **NO. 13-516**

**N. BURL CAIN, WARDEN**                     **SECTION "J"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The petitioner, Charles Holcombe, Jr., is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On August 15, 2006, a bill of information was filed in St. Tammany Parish charging Holcombe and co-defendant Rhonda Achee with one count of armed robbery.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> Madisonville Mayor Peter Gitz, the victim, owned and operated Badeaux's Drive–In, a restaurant in Madisonville.  After the restaurant closed at 10:00 p.m., he routinely went into his office, a shed behind the restaurant, totaled the receipts, and prepared the bank deposit. On June 21, 2006, at approximately 10:30 p.m., as the victim was exiting the shed with approximately $2300, he was attacked from behind.  He did not see his attacker's face, but he did note that the attacker was a white male, approximately 5'6" or 5'7", with "big" arms and legs, and short hair.[4] The attacker struck Mayor Gitz with a blunt object, possibly a pipe, between twelve and fifteen times.  After Mayor Gitz fell to the ground, the attacker took a wallet from his pocket and fled.  Mayor Gitz was seventy-one years old at the time of the attack; he suffered a cracked jaw, numerous lacerations to his head which had to be stapled closed, and the loss of his bottom teeth, which were knocked out during the attack.
> Sylvia C. Leyva lived in the house next to Badeaux's, adjacent to the parking area behind the restaurant.  On the afternoon of the offense, while she was working in her yard, she saw a husky male with short hair looking over her fence and into the back of Badeaux's. The man saw Ms. Leyva looking at him, and quickly walked away. At approximately 10:45 that evening, Ms. Leyva went out onto her porch after hearing moaning coming from behind Badeaux's. She saw someone coming from the direction of Badeaux's. As the person passed in front of her house, she turned on her porch light. The person looked at her

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 7 of 7.

[4]The defendant is 5'6" tall.

before continuing on and she noticed that he had his left arm under his shirt, and was holding something. Mrs. Leyva identified the defendant in a photographic line-up and in court as the person she had seen looking into the back of Badeaux's before the attack, and as the person who passed by her house after the attack.

Video surveillance from Riverside Bar and Grill, across the street from Badeaux's, showed an old, grey or silver Volvo passing by Badeaux's three times at approximately the time of the offense. Madisonville Police Officer David Smith recognized the vehicle as belonging to Rhonda Achee.

The defendant and his wife, Lyndsey Gaspard, had moved in with Achee because they could no longer afford to pay for power or water to their home. Following the attack, the defendant and Achee drove to Covington in Achee's car. The vehicle was subsequently stopped for a traffic violation where it was discovered that there was blood in the front of the vehicle.

Gaspard had worked at Badeaux's approximately one month prior to the attack, and the defendant had waited for her in and around the restaurant while she worked. On at least one occasion during that time, Melissa Bone, the restaurant manager, found the defendant behind the restaurant and told him he was not supposed to be there.

At trial, Gaspard testified that she was married to the defendant between March 22, 2006 and about October of 2008. According to Gaspard, approximately two days before the offense, the defendant and Achee had discussed "getting" or "robbing" Mayor Gitz. Gaspard indicated that on the day of the offense, at about 11:30 a.m., the defendant drove to Badeaux's, walked around the back, and then came back to the car.

In a June 23, 2006 audiotaped statement, the defendant indicated that Achee had driven him to Badeaux's on the night in question, dropped him off, and then driven around the block while he hid behind the shed. The defendant confessed to striking Mayor Gitz with "a stick or something" and grabbing his wallet. He indicated that Achee picked him up after the attack and they drove towards Covington. The defendant indicated that there was approximately $1500 cash in the wallet. He claimed he burned the clothes he was wearing during the attack, and threw the stick he had used to hit the victim out of the window as he and Achee drove out of town.

State v. Holcombe, 35 So.3d 1084, 1085-86 (La. App. 1st Cir. 02/12/10), 2009-KA-1309.

St. Rec. Vol. 7 of 7.

Holcombe was tried before a jury on November 17, 2008.[5]  On November 20, 2008, Holcombe was found guilty as charged.[6]  On December 10, 2008, Holcombe was sentenced to 55 years in prison without benefit of parole, probation or suspension of sentence.[7]  On February 5, 2009, a multiple offender hearing was conducted, and Holcombe was found to be a second felony offender.[8]  On March 9, 2009, the trial court vacated Holcombe's earlier sentence and resentenced him as a second felony offender to 75 years in prison without benefit of parole, probation, or suspension of sentence, but with credit for time served.[9]

On October 19, 2009, appointed counsel filed an appeal on Holcombe's behalf, asserting a single ground for relief, i.e., the prosecutor made an improper reference  to the defendant's wife's privilege not to testify against her husband.[10]  On February 12, 2010, the Louisiana First Circuit affirmed Holcombe's conviction, habitual offender adjudication and sentence.[11]

---

[5]St. Rec. Vol. 1 of 7, p. 139.  Holcombe was the sole defendant at trial.

[6]Id. at p. 124.

[7]St. Rec. Vol. 4 of 7, pp. 806 and 815.

[8]Id. at pp. 819 and 832.

[9]Id. at pp. 834, 836 and 838.

[10]St. Rec. Vol. 6 of 7. Holcombe's motion for leave to file a supplemental appeal brief was granted, but he failed to do so. Id.

[11]State v. Holcombe, 35 So.3d 1084 (La. App. 1st Cir. 2010); Case No. 2009-KA-1309, St. Rec. Vol. 6 of 7.

On March 10, 2010, Holcombe filed a writ application in the Louisiana Supreme Court asserting the same claim raised in the Louisiana First Circuit.[12]  On October 8, 2010, the Louisiana Supreme Court denied Holcombe's writ application without opinion.[13] Holcombe's conviction became final 90 days later, on January 6, 2011, when he did not file a writ application with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200-01 (5th Cir. 1998)).  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. R. 13(1).

On January 17, 2012, Holcombe dated and signed an application for post-conviction relief which was filed in the state trial court,[14] in which he asserted the following claims:  (1) He was denied a competency hearing.  (2) He was denied effective assistance of trial counsel because his counsel failed to (a) subpoena a psychiatrist to testify as to his competency, and (b) object to prejudicial statements made by the prosecutor during closing argument.  (3) He was denied effective assistance of appellate counsel because his counsel failed to make arguments that had been properly preserved

---

[12]St. Rec. Vol. 7 of 7.

[13]State v. Holcombe, 46 So.3d 1265 (La. 2010); Case No. 2010-KO-0597, St. Rec. Vol. 7 of 7.

[14]St. Rec. Vol. 6 of 7, Uniform Application for Post-Conviction Relief (signed 01/17/12).

for appeal. On March 19, 2012, the trial court denied Holcombe's application for post-conviction relief.[15]

On June 22, 2012, Holcombe filed an untimely application for a writ of review in the Louisiana First Circuit[16] raising one claim that had not been raised in the trial court, i.e., that the prosecutor made prejudicial statements during closing argument.[17]   On August 24, 2012, the Louisiana First Circuit denied Holcombe's writ application "on the showing made."[18]

On September 12, 2012, Holcombe filed a timely application for supervisory writs in the Louisiana Supreme Court, asserting the same claims raised in the Louisiana First Circuit.[19]   On February 8, 2013, the Louisiana Supreme Court denied Holcombe's writ application without reasons.[20]

II.   FEDERAL HABEAS PETITION

On March 22, 2013, the clerk of this court filed Holcombe's petition for federal habeas corpus relief in which he asserts five (5) claims:  (1) The prosecutor made an

---

[15]Id., District Court Judgment, signed 03/19/12.

[16]Holcombe had 30 days from issuance of the trial court's judgment to mail or file for review in the Louisiana First Circuit, La. App. Rule 4-3, a deadline he missed by 30 days.

[17]St. Rec. Vol. 7 of 7.

[18]State v. Holcombe, Case No. 2012-KW-1106 (La. App. 1st Cir. 08/24/12); St. Rec. Vol. 6 of 7.

[19]St. Rec. Vol. 7 of 7.

[20]State v. Holcombe, 108 So.3d 80 (La. 2013), Case No. 2012-KH-2007. Id.

improper reference to his wife's privilege not to testify against her husband. (2) He was denied a competency hearing. (3) He was denied effective assistance of trial counsel. (4) He was prejudiced by the prosecutor's closing argument. (5) He was denied effective assistance of appellate counsel.[21]

The State filed a response in opposition to Holcombe's petition, alleging that the petition was not timely filed and that Holcombe failed to exhaust state court remedies as to one of his claims. Alternatively, the State argues that Holcombe's claims are without merit.[22]

III.    GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to

---

[21]Rec. Doc. No. 1.

[22]Rec. Doc. No. 11.

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

Holcombe's petition, which, for reasons discussed below, is deemed filed in this federal court on March 18, 2013.[24]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State alleges that Holcombe's petition is untimely and that he has failed to exhaust state court remedies as to one of his claims for relief.  While Holcombe indeed has failed to exhaust his state court remedies, I find that it is unnecessary to address his failure to exhaust because his petition must be dismissed with prejudice as time barred.

---

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Holcombe's petition was actually filed by the clerk of court on March 22, 2013, once Holcombe had been granted pauper status. However, Holcombe dated his signature on the petition March 18, 2013. This is the earliest date on which he could have delivered the pleading to prison officials for mailing. The fact that he did not submit the filing fee at the time of mailing does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

IV.    <u>STATUTE OF LIMITATIONS</u>

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[25]  <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  Holcombe's conviction was final on January 6, 2011, when he did not file a writ application with the United States Supreme Court.

Therefore, under a literal application of the statute, Holcombe had until January 6, 2012, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

---

[25]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

Holcombe asserts that his post-conviction application signed on January 17, 2012, more than one year after his conviction became final, was prepared by inmate counsel and ready to be timely filed in "the latter part of December 2011."[26]  However, when the application was completed, Holcombe was unavailable to sign it because he had been charged with violating a prison rule and had been placed in administrative segregation. By the time the pleading reached his administrative segregation unit, he had been transferred to a different administrative segregation unit. By the time the pleading arrived in his second administrative segregation unit, he "had already had his hearing before [t]he

---

[26]Rec. Doc. No. 12, p. 2.

Disciplinary Board and had been sentenced to the Working Cell Blocks for his rule infraction."[27]

  The fact that Holcombe was prevented from timely submitting his post-conviction application due to prison transfers precipitated by his <u>own</u> violation of prison disciplinary rules does <u>not</u> provide a basis for equitably tolling the applicable statute of limitations. Holcombe's delay was of his own making and not caused by any affirmative action by his jailers that misled him into waiting. In addition, Holcombe delayed until the last minute to prepare his post-conviction application.  He concedes that it was not ready until the latter part of December 2011, which reflects that he did not exercise the requisite due diligence.  <u>Johnson v. Quarterman</u>, 483 F.3d 278, 286 (5th Cir. 2007) (waiting until "last minute" to complete petition demonstrates lack of diligence which cannot support application of doctrine of equitable tolling);  <u>Walker v. Norris</u>, 436 F.3d 1026, 1032-33 (8th Cir. 2006) (same); <u>Butler v. Ryker</u>, 2010 WL 1790361, *3 (C.D. Ill May 4, 2010) (same).

  Holcombe's failure to show the requisite "extraordinary circumstances" is further established when compared with other cases in which prisoners, facing comparable or greater obstacles, were not granted equitable tolling.  <u>See</u> <u>Fisher v. Johnson</u>, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during

---

[27]<u>Id</u>.

which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009) (petitioner not entitled to equitable tolling simply because he remained in administrative segregation and had limited access to law library); Dodd v. United States, 365 F.3d 1273, 1283 (11th Cir.), cert. denied, 543 U.S. 999 (2004) ("lockdowns and 'periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate"); Montenegro v. United States, 248 F.3d 585, 594 (7th Cir. 2001) (attorney's nonresponsiveness, prisoner's ignorance of the law and prison transfer do not warrant equitable tolling).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-

conviction proceedings are pending must merely be subtracted from the one-year

limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed
> state habeas application is pending must be excluded when calculating the
> one[-]year period.  Under the plain language of the statute, any time that
> passed between the time that [petitioner's] conviction became final and the
> time that his state application for habeas corpus was properly filed must be
> counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL

609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F.

Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the

meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable

procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544

U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is]

the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303,

306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir.

1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness

consideration in Louisiana, for purposes of the AEDPA, requires application of a prison

mailbox rule to state pleadings.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary

state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-

20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

The one-year AEDPA limitations period began to run in Holcombe's case on January 7, 2011, the day after his conviction was final. The limitations period ran uninterrupted for 365 days, until January 9, 2012, when it expired.[28]  Holcombe had no properly filed state post-conviction or other collateral review proceedings pending in any

---

[28]The last day fell on Saturday, January 7, 2012. Therefore, the finality date is the next business day, Monday January 9, 2012. Fed. R. Civ. P. 6(a)(1)(C) (weekends are not included in the calculation of period when it would be the last day of the period); La. Code Crim. P. art 13 (weekends are not included in the calculation of period when it would be the last day of the period).

14

state court during that time period, and he did not file his federal habeas petition until more than one year later.

Even if Holcombe's assertion that his state court post-conviction application had been prepared and was ready to be filed in late December 2011 was accepted as true, by then he had permitted eleven (11) months of the twelve (12)-month statute of limitations period to lapse.  Pretermitting the fact that his untimely June 22, 2012 state appellate court writ application was not properly filed and would not have tolled the AEDPA limitations period, Holcombe still permitted more than the remaining one month to lapse between denial of his final state court application by the Louisiana Supreme Court and the date his federal petition was deemed filed on March 18, 2013.

Under these circumstances, the record establishes that, after his conviction became final, Holcombe allowed more than one year to lapse without any properly filed and pending state court proceedings and without having filed a timely federal petition for habeas corpus relief.  Thus, his federal habeas corpus petition must be dismissed as time-barred.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that the petition of Charles Holcombe, Jr., for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[29]

New Orleans, Louisiana, this _____12th_____ day of August, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[29]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.